JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
Californians for Humane Farms

## DEFENDANTS
Ed Schafer, Secretary, U.S. Dept. of Agriculture,
American Egg Board

**(b)** County of Residence of First Listed Plaintiff: San Francisco
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Jonathan R. Lovvorn
The Humane Society of the United States
2100 L Street, NW
Washington, DC 20037

Attorneys (If Known)

BZ  ADR

E-filing

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [x] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [x] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. Security Act | | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 540 Mandamus & Other | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities -Other | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – Alien Detainee | | |
| | | | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Administrative Procedure Act, 5 U.S.C. 551, et seq.

Brief description of cause:
Challenge to final agency action - arbitrary, capricious, and not in accordance with law

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE AND "X" IN ONE BOX ONLY)
[x] SAN FRANCISCO/OAKLAND    [ ] SAN JOSE

DATE 8/11/08
SIGNATURE OF ATTORNEY OF RECORD

JONATHAN R. LOVVORN, CA Bar No. 187393
jlovvorn@hsus.org
2100 L St., N.W.
Washington, DC 20037
(202) 955-3669 (phone)
(202) 778-6132 (fax)

*Counsel for Plaintiff Californians for Humane Farms*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CALIFORNIANS FOR HUMANE FARMS<br>1545A Powell Street<br>San Francisco, CA 94133<br><br>Plaintiff,<br><br>v.<br><br>ED SCHAFER, Secretary<br>United States Department of Agriculture<br>1400 Independence Avenue, S.W.<br>Washington, DC 20250,<br><br>AMERICAN EGG BOARD<br>1460 Renaissance Drive<br>Park Ridge, IL 60068,<br><br>Defendants. | E-filing<br><br>CV 08  3843<br><br>Civ. No. _____ ( )<br><br>Administrative Procedure Act Case |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

This action challenges a decision by the United States Department of Agriculture ("USDA"), made on or before January 15, 2008, approving the 2008 revised annual budget of the American Egg Board ("AEB"), and specifically the USDA Secretary's approval of a provision contained therein for the expenditure of funds for the purpose of influencing voter opinion on, and ultimately defeating, a

ballot initiative certified for consideration in the November 2008 California election. This decision permits the AEB to spend up to three million dollars ("$3 million") to fund public relations projects that are intended to affect public opinion on the proposed legislation, in direct contravention of a longstanding Congressional prohibition on federal interference with elections. *See* Egg Research and Consumer Information Act, Pub. L. No. 93-428 (1974); 7 U.S.C. § 2707, *et seq.*

After both the AEB and the USDA separately wrote to Plaintiff in March 2008 to assure Plaintiff that the $3 million would not be spent to influence the upcoming election, Plaintiffs received several documents pursuant to a Freedom of Information Act request that indicate that the purpose of the $3 million is to fund activities intended to defeat the ballot initiative. These documents included correspondence between AEB and USDA officials that contain statements confirming that these millions in federal checkoff funds are indeed destined to be spent on billboards and other advertising and public relations materials intended "to defeat the measure."

The Secretary's decision not only contravenes the express language of the statute governing AEB activities, *id.*, it also violates a similar prohibition in the Commodities Promotion, Research and Information Act – a statute governing USDA oversight of all commodity promotion programs, Pub. L. No. 104-127 (1996); 7 U.S.C. § 7411, *et seq.*, as well as the USDA's own regulations, 7 C.F.R § 1250.301, *et seq.* The Secretary's decision approving the AEB's 2008 revised annual budget is therefore unlawful under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*, and must be set aside.

**JURISDICTION**

1.  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it presents a federal question under the laws of the United States.

## VENUE

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(e). Plaintiff maintains a domicile in this district, and a substantial part of the acts or omissions giving rise to this action occurred or will occur in this district.

## INTRADISTRICT ASSIGNMENT

3. Pursuant to Civ. L.R. 3-2(c) and 3-5(b), assignment is appropriate in the San Francisco or Oakland Divisions, because Plaintiff maintains a domicile in San Francisco County and no real property is at issue in this action.

## THE PARTIES

4. Plaintiff Californians for Humane Farms ("CHF") is a nonprofit ballot committee, established for the purpose of sponsoring a ballot initiative in the November 2008 California election. CHF was formed and is supported by the Humane Society of the United States, Farm Sanctuary and other animal protection groups, family farmers, veterinarians, public health professionals.

5. The ballot initiative sponsored by CHF is entitled the Prevention of Farm Animal Cruelty Act ("Proposition 2"), and would prohibit the tethering or confinement of pregnant pigs, veal calves, and egg-laying hens in a manner that prevents such animals from lying down, standing up, fully extending their limbs, or turning around freely. A petition to place Proposition 2 on the November 2008 ballot was certified by the California Secretary of State on April 9, 2008.

6. Plaintiff brings this action on its own behalf, and on behalf of the more than 4,000 California resident volunteers who collectively spent several thousand hours gathering signatures, and the nearly 800,000 citizens of California that signed the petition to put Proposition 2 on the November ballot, whose interests in seeking the fair consideration and ultimate enactment of the initiative are aligned with CHF. Plaintiff is the sole means by which these individuals can express their collective views and protect their collective interests.

7.  Defendant Ed Schafer is the Secretary of the USDA and is responsible for implementing the Egg Research and Consumer Information Act ("ERCIA") and Commodity Promotion, Research, and Information Act ("CPRIA"), including approval of the AEB's annual budget and expenditures, and enforcing the prohibition on activities and expenditures intended to influence legislation or other governmental action or policy.

8.  Defendant Schafer's decision to approve budgetary expenditures and activities of the AEB as set forth below impede Plaintiff's actions and frustrate Plaintiff's ability to pursue its goals for several reasons. By example, the expenditure of funds by the AEB to convince consumers that additional measures to protect farm animals from unnecessarily cruel confinement practices are imprudent and unwarranted will directly undermine Plaintiff's goal of enacting the PFACA to require such measures. Moreover, this expenditure will require Plaintiff to divert its limited organizational and programmatic resources to address claims made about the value of restrictive and injurious forms of confinement used in industrial agricultural operations, rather than using these limited resources for other forms of advocacy in support of the legislation.

9.  Defendant Schafer's approval of the AEB's revised 2008 annual budget permits the unlawful expenditure of funds by the AEB for political purposes, using funds acquired through a federal legislative checkoff program. This directly harms Plaintiff's efforts to enact Proposition 2, and requires Plaintiff to devote significant resources to counter the unlawful influence on voters by the activities funded through the approved expenditures. But for Defendant Schafer's actions, the unlawful expenditures by the AEB would be disallowed.

10. Defendant American Egg Board is a quasi-governmental entity created by Congressional statute to maintain and develop markets for eggs, spent hens (hens whose egg production has dropped to unprofitable levels) and products thereof, through education, promotion, and research activities. The AEB is funded

by a federal legislative checkoff program. Any producer with more than 75,000 egg-laying hens is required to pay a fee to the AEB based on the number of cases of eggs the producer generates. The Egg Board consists of 18 members and an equivalent number of alternates, all of whom are egg producers nominated by regional egg industry organizations and appointed by the Secretary of Agriculture. The AEB also has an administrative staff that carries out the Board's activities.

11.  The AEB is joined as a necessary party under Rule 19(a) of the Federal Rules of Civil Procedure. Plaintiff asserts no cause of action directly against the AEB; however, complete relief cannot be afforded to Plaintiff in the absence of the AEB. The AEB is, as a practical matter, in such a position as to impair the effectiveness of the relief sought by Plaintiff in this case.

12.  The AEB submitted a revised 2008 annual budget to the USDA in which its "special projects" budget is increased by $3 million in order to fund a campaign approved by a motion made at the AEB's November 2007 board meeting in Napa, California. The revised 2008 annual budget also contains a separate provision to permit a substantial draw down on AEB reserve accounts of nearly $2.9 million, presumably to help fund the same campaign. The USDA has already approved this revised budget in full.

13.  Even if the USDA voluntarily withdraws it approval of the planned expenditure of the AEB's federal checkoff funds, or such approval is rejected by the Court as unlawful, the AEB has access to funds that can be used to unlawfully interfere with the upcoming election, and complete relief can only be afforded to Plaintiff if both USDA approval and the actual expenditure of the funds is enjoined. In short, Plaintiff's ability to protect its interests against unlawful expenditures by the AEB cannot be afforded unless the AEB is joined as a necessary party under Rule 19.

14.  Furthermore, joinder of the AEB is feasible. The AEB is subject to service of process, and joinder of the AEB does not deprive the Court of subject

COMPLAINT

matter jurisdiction, which is based on the existence of a federal question under 28 U.S.C. § 1331. Moreover, the AEB may have a legally protected interest in the outcome of the controversy between Plaintiff and the USDA, and may be joined for that reason.

15. The present controversy transcends purely private interests and also seeks to vindicate rights which are essentially public in nature. Therefore, the joinder of the AEB is appropriate, and this litigation may proceed with Secretary Schafer and the AEB as parties.

16. Plaintiff's injuries will be redressed if it prevails in this action, because Defendant Schafer's approval of the unlawful expenditures of the AEB will be set aside and remanded, and Defendant AEB enjoined from spending funds for the purpose of affecting voter opinion on Proposition 2. Such result would prevent unlawful interference in Plaintiff's efforts to have additional animal welfare protections for farm animals enacted into California state law, and Plaintiff will not be required to divert its organizational resources to respond to the oppositional activities funded with federal checkoff funds.

## STATUTORY AND REGULATORY FRAMEWORK

**A.** *Egg Research and Consumer Information Act*

17. The ERCIA, Pub. L. No. 93-428, was enacted on October 1, 1974. In its legislative findings and declaration of policy for the ERCIA, Congress stated that it chose to create the AEB because:

> [t]he production and marketing of [egg and spent fowl] products by numerous individual egg producers have prevented the development and carrying out of adequate and coordinated programs of research and promotion necessary for the maintenance of markets and the development of new products of, and markets for, eggs, egg products, spent fowl, and products of spent fowl.

7 U.S.C. §2701. The AEB was not formed to provide a vehicle for egg producers to use the imprimatur of a quasi-governmental entity to promote or oppose particular

laws and policies relating to eggs and egg production, but to maintain and develop new markets for and products of eggs within existing regulatory frameworks.

18. Notably, the Federal Trade Commission opposed the enactment of the ERCIA out of concern that the AEB's advertising and promotional activities intended to build a demand for eggs would be inherently "false or misleading." The Commission noted that Congressional chartering of the AEB "would clothe such advertisement with the stamp of Congressional approval, and moreover, would place such promotion under the aegis of the Secretary of Agriculture." *See* H. Rep. 93-1032, 93rd Cong., 2d Sess. (May 10, 1974). In response to this and similar concerns, Congress sought to ensure that the relationship between the AEB and the USDA was not collaborative, but that the latter was clearly charged with oversight of the activities and expenditures of the former.

19. The Senate Report accompanying the bill eventually enacted as the ERCIA (H.R. 12000) specifically notes that the AEB must act within the terms of a national order ("order") issued by the Secretary of Agriculture, and the order may be "terminated or suspended by the Secretary if he found that it obstructs or does not tend to effectuate the purposes of the bill." S. Rep. 93-1109, 93rd Cong., 2d Sess. (Aug. 20, 1974). The Senate Report also noted the "greater accountability" associated with a board appointed by the Secretary, the "research and information program [of which] will be subject to the Secretary's review and approval." *Id.*

20. Under the ERCIA, the activities of the AEB are strictly limited. The AEB's powers and duties "shall include *only*" the authority to administer the order, make rules for its constituent members to effectuate the terms of the order, investigate and report to the Secretary any violations of the order, and recommend to the Secretary appropriate amendments to the order. 7 U.S.C. § 2707(a) (emphasis added). Congress limited the terms and conditions of the Secretary's order to advertising, sales promotion, and consumer education plans or projects; research, marketing, and development projects and studies; recordkeeping and

reporting requirements; other incidental and necessary terms; and *"no others."* 7 U.S.C § 2706 (emphasis added).

21. In addition, the ERCIA requires that "[a]ll expenditures of the Egg Board must be approved by the Secretary." H. Report 93-1032, 93rd Cong., 2d Sess. (1974); 7 U.S.C. § 2707(d). Moreover, the Act requires that all "plans or projects" of the AEB "must be approved by the Secretary before becoming effective." 7 U.S.C. § 2707(c).

22. In addition to, and separate from, the limitation on the types of activities that may be undertaken by the AEB, Congress included a provision in the ERCIA that prohibits use of federal checkoff funds for political purposes. 7 U.S.C. § 2707(h). Specifically, *"no funds collected by the Egg Board under the order shall in any manner be used for the purpose of influencing governmental policy or action,"* except for recommendations to the Secretary as to amendments to the order.

23. This prohibition on influencing governmental policy or action is a required term of any order issued by the Secretary. 7 U.S.C. § 2707. The Secretary is obligated to terminate or suspend operation of any part of an existing order if activities permitted thereby do not operate consistently with the provisions of the ERCIA. 7 U.S.C. § 2709(a).

**B.    *Commodity Promotion, Research, and Information Act***

24. The CPRIA was enacted on April 4, 1996 as part of the Federal Agricultural Improvement and Reform Act (Pub. L. No. 104-127). Similar to the ERCIA, the CPRIA is designed to maintain and expand markets and uses of agricultural commodities. The CPRIA applies to commodity promotion boards for which the Secretary of Agriculture issues national research and promotion orders.

25. Like the ERCIA, the CPRIA requires that all commodity promotion boards "submit to the Secretary for approval plans and projects for promotion, research, or information relating to the agricultural commodity covered by the

order," and "a budget of its anticipated annual expenses and disbursements to be paid to administer the order." 7 U.S.C. § 7414(e).

26. The CPRIA sets forth certain terms that are required to be a part of all research and promotion orders issued by the Secretary, including a prohibition on political spending. *See* 7 U.S.C. § 7414. Specifically, the CPRIA prohibits commodity promotion boards from "using funds collected by the board under the order" to engage in "any action undertaken for the purpose of influencing any legislation or governmental action or policy other than recommending to the Secretary amendments to the order." *Id.* at § 7414(d)(2).

### C. *Egg Research and Promotion Order Regulations*

27. The national egg research and promotion orders required to be issued by the USDA pursuant to the ERCIA and CPRIA are published as regulations in Title 7 of the Code of Federal Regulations. Under these regulations, the AEB is only permitted to incur such expenses "as the Secretary finds are reasonable," and as necessary "to enable it to exercise its powers and perform its duties" in accordance with the law. 7 C.F.R. § 1250.346.

28. The egg research and promotion order regulations include an express prohibition on influencing governmental action, stating that "[n]o funds collected by the Board under this subpart shall in any manner be used for the purpose of influencing governmental policy or action except to recommend to the Secretary amendments to this subpart." *Id.*

### D. *USDA Guidelines for Oversight of Research and Promotion Boards*

29. The USDA's Agricultural Marketing Service, which is charged with oversight of commodity promotion programs such as the AEB, has published Guidelines for Oversight of Research and Promotion Boards ("Guidelines").

30. The terms "influencing governmental policy or action" and "influencing any legislation," as used in the ERCIA and CPRIA, are defined in the USDA's Guidelines. Pursuant to the Guidelines, the term "influencing of governmental

policy or action" means "any action the principle purpose of which is to bring about a change in existing policy or regulation or affect the outcome of proposed policy or regulation," except that commodity promotion programs may recommend certain policy changes or actions to the Secretary of Agriculture. Pursuant to the Guidelines, the term "influencing of legislation" includes "any attempt to influence any legislation, or any attempt to affect the opinions of the general public or any segment thereof concerning legislation."

31. The USDA has interpreted these terms to require that commodity promotion programs, including the AEB, "must not attempt to influence legislation or voting, must not attempt to affect the opinions of the public concerning legislation, and must not attempt to affect the outcome of proposed legislation," and that any materials produced or activities funded by commodity promotion programs "cannot be perceived as attempting to sway opinion" regarding ballot initiatives.

32. The USDA Guidelines also state that the "prohibition on the use of checkoff funds applies equally to any trade/producer organizations funded wholly or in part by a particular board or contractors to the board." Therefore, any industry trade group or producer intending to use the AEB's federal checkoff funds may not do so on projects intended to influence the vote on a state ballot initiative.

E.  *Administrative Procedure Act*

33. The APA governs the manner in which an administrative agency makes formal decisions, including the proposal and establishment of rules and regulations and the adjudication of matters before the agency. 5 U.S.C. § 551 *et seq.* The APA also sets forth a means by which federal courts may directly review agency decisions. *Id.* at § 701 *et seq.*

34. Congress enacted the APA as "a comprehensive charter of private liberty and a solemn undertaking of official fairness," and a "a bill of rights for the hundreds of thousands of Americans whose affairs are controlled or regulated in one way or another by agencies of the federal government." S. Rep. No. 248, 79th

Cong., 2d Sess. 297-98 (1946). Accordingly, the APA provides that any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

35. Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency decision that expressly violates federal law, or that approves the same, is thus prohibited. The APA also requires that agency decisions be set aside if the agency has failed to "observ[e] procedures required by law." 5 U.S.C. § 706(2)(D). Therefore, the failure of an agency to carry out a statutorily mandated duty is also a violation of the APA.

**FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF**

A.   *The Prevention of Farm Animal Cruelty Act*

36. Proposition 2 was submitted by Plaintiff to the Initiative Coordinator's Office of the Attorney General of California on August 9, 2007. It is California ballot initiative number 07-0041.

37. The purpose of Proposition 2 is to prohibit cruel confinement of certain farm animals. Specifically, Proposition 2 will prohibit the tethering or confinement of pregnant pigs, veal calves, and egg-laying hens in a manner that prevents such animals from lying down, standing up, fully extending their limbs, or turning around freely.

38. Nearly 800,000 citizens of California signed the petition to have Proposition 2 placed on the November 2008 ballot. On April 9, 2008, the California Secretary of State certified the ballot measure for the November 4, 2008 election.

B.  *The AEB's Decision to Draw $3 Million from Reserve Funds to Support Activities Intended to Defeat the Ballot Initiative*

39.  On or about November 1, 2007, at the Executive Committee meeting of the AEB, the Board unanimously passed a motion to set aside $3 million for the purpose of providing financial assistance to the opposition of Proposition 2 in California. Officials of the USDA's Agricultural Marketing Service were present at the November 2008 board meeting.

40.  In his November 5, 2007 Weekly Activity Report to the Administrator of the Agricultural Marketing Service, Rex Barnes, the Deputy Administrator of Poultry Programs stated that the purpose of the funds set aside by the Executive Committee motion was to "supplement" an ongoing "campaign to defeat the measure" – referring specifically to Proposition 2 – through the funding of "public relations and other projects."

41.  Passage of the motion was reported in the December 1, 2007 issue of the trade publication Egg Industry, in an article entitled "AEB Supports California Egg Battle." The article states:

> The American Egg Board unanimously passed a motion at its recent fall meeting in California that $3 million be held in reserve to assist the state if necessary in the industry's current battle with animal activists. Animal welfare groups are attempting to place a referendum on the November 2008 ballot that would eliminate cage production in California.

The article indicates that multiple board members spoke at the November meeting expressing concern that "a great deal of work needs to be done on this challenge as it is estimated that if the referendum vote were held today it would pass."

42.  Subsequent articles in Egg Industry have reported on AEB support of California producers and the egg industry trade group United Egg Producers ("UEP") in combating Proposition 2. *See, e.g.,* John Todd, Crystal Ball has 2008

Looking like Another Profitable Year, EGG INDUSTRY 6 (Jan. 2008), *available at* http://www.wattpoultry.com/EggIndustry/Article.aspx?id=20578.

### C. *USDA Approval of Revisions to the AEB 2008 Annual Budget for the Expenditure of Funds to Influence Voter Opinion on the Initiative*

43. The AEB's initial 2008 annual budget did not contain any provision for the expenditure of funds for special projects related to animal welfare. In fact, the AEB's initial 2008 annual budget contained the same funding for special projects ($1.52 million) as did the AEB's 2007 budget approved by the USDA. The AEB's initial 2008 budget was approved by the Secretary of Agriculture on or before August 28, 2007.

44. The AEB subsequently submitted a revised 2008 annual budget to the USDA. The revised budget contains an increase of nearly $2.9 million in revenue, all drawn from the AEB's reserve accounts. The revised budget contains an equivalent increase in expenses.

45. Except for a reduction in the AEB budget of $120,000 allocated to a dietary cholesterol symposium and a small increase in administration expenses of $10,000, the change in expenses between the AEB's initial 2008 annual budget and its revised 2008 budget is entirely due to the allocation of $3 million for a "special project" related to animal welfare.

46. The AEB's revised 2008 annual budget, including the $3 million draw down on AEB reserves for use in opposing the animal welfare initiative, was approved by the Secretary of Agriculture on or before January 15, 2008.

### D. *Plaintiff's Attempts to Resolve this Matter Directly with the AEB and USDA*

47. On March 6, 2008, Plaintiff wrote to both the AEB and the USDA's Agricultural Marketing Service indicating that the planned expenditure of federal checkoff funds to support a political campaign in opposition to the California ballot initiative violates the ERCIA, CPRIA, and USDA regulations. Plaintiff requested

that the USDA withdraw its approval of the AEB's $3 million budgetary allowance, and that AEB rescind the motion it passed in November 2007 and refrain from spending any federal checkoff funds for the purpose of influencing voter opinion on the ballot initiative.

48. The USDA and the AEB sent response letters to Plaintiff on March 14 and March 17, 2008, respectively. Both the USDA and the AEB stated in these response letters that the motion passed by the Board in November 2007 simply reserved funds for use in general educational and promotional programs concerning agricultural practices associated with egg production, that the funds could be used in any state, and that the funds were not planned for use to influence voting on the California ballot initiative.

49. In March and April 2008, Plaintiff received documents from the USDA in response to a February 2008 Freedom of Information Act ("FOIA") request concerning AEB spending practices. These documents included minutes from the AEB Executive Committee meeting in November 2007, as well as emails between AEB officials and USDA staff in which the $3 million set aside pursuant to the November motion is specifically referred to as a "draw down" to be used in opposition to "the CA animal welfare ballot campaign." Other documents received in response to the FOIA request, written by USDA officials, characterized the AEB expenditure as intended "to defeat the measure."

50. The email correspondence between the AEB and USDA officials also indicated that the AEB intended to give some of its federal checkoff funds to the private industry trade group UEP and its president, Gary West, for use in producing billboards to combat the animal welfare ballot initiative.

51. On May 15, 2008, the Plaintiff sent reply letters to both the USDA and the AEB, citing and attaching the documents received in response to the FOIA request as indicating that the purpose of the $3 million special project is clearly to sway public opinion concerning, and ultimately to defeat, the California animal

welfare ballot initiative. Plaintiff renewed its request that the USDA withdraw its approval of the AEB's revised budget and that the AEB rescind its November 2007 motion and its plans to spend federal checkoff funds to influence the vote in the upcoming election.

52.  The USDA and the AEB responded to Plaintiff on May 28 and 29, 2008, respectively. Both indicated that none of the funds had been spent at that point. The USDA did not indicate that it would withdraw its approval of the AEB's revised budget. The AEB did not indicate that it would rescind its November 2007 motion, or that it would refrain from spending any of the $3 million set aside for the purpose of influencing voter opinion of the ballot initiative.

53.  On June 24, 2008, representatives of one of the Plaintiff's sponsors, the Humane Society of the United States, met with Secretary Schafer in Washington, D.C. The parties discussed the USDA's decision to approve the AEB's revised 2008 annual budget and the expenditure of the $3 million from AEB reserve accounts. Secretary Schafer again assured that he would be able to prevent the Egg Board from spending checkoff funds in an attempt to influence voter opinion on the ballot initiative by specifically reviewing every disbursement of funds from the $3 million set aside by the AEB.

54.  On Friday, August 8, 2008, however, Defendant Secretary Schafer informed Wayne Pacelle, CEO of the HSUS, a chief sponsor of Plaintiff CHF, that he had been advised that "the Egg Board's expenditures are proper." Secretary Schafer also commented that some people make think it "unfair" if "those who think differently" than Plaintiff are not allowed "to express their opinions too." Thus, it has become evident that the USDA still does believe that there is a difference between private entities voicing their opposition to Proposition 2, and a quasi-governmental entity using federal checkoff funds to do so.

55.  Secretary Schafer also indicated that he had already approved AEB advertisements that claim that "buying local gets you better eggs," which is clearly

designed to support one of the "No on Prop. 2" ballot committee's chief campaign messages – noted throughout its Internet homepage and in its ads and press releases – that Proposition 2 "Eliminates fresh, safe and local eggs; [and] forces a dependence on eggs from Mexico and out-of-state."

**PLAINTIFF'S CLAIM FOR RELIEF**

*Claim One – Violation of the Administrative Procedure Act, 5 U.S.C. § 706*

56. Plaintiff hereby incorporates by reference all the preceding paragraphs as if fully set forth herein.

57. Activities intended to influence voter opinion on, and result in the ultimate defeat of, the PFACA are not among the enumerated activities permitted under the ERCIA. 7 U.S.C. § 2706.

58. The AEB's commitment to financial support of such activities is also unlawful under the ERCIA, as well as the CPRIA. Specifically, the allocation of $3 million in federal checkoff funds, as set forth in the motion approved at the AEB's November 2007 Executive Committee meeting, and the AEB's revised 2008 annual budget approved by the Secretary of Agriculture, is intended to influence voter opinion on, and to affect the ultimate disposition of the PFACA, and thus violates the prohibition on political spending under the ERCIA and CPRIA. 7 U.S.C. § 2707(h); 7 U.S.C. § 7414(d).

59. Consequently, Defendant Schafer's decision approving the transfer of this $3 million from the AEB's reserves to its special projects budget, and approving the expenditure of these funds, is arbitrary and capricious, an abuse of discretion, and is not in accordance with law, and is thus a violation of the Administrative Procedure Act, 5 U.S.C. § 706(2).

60. Defendant AEB's allocation of $3 million intended to influence voter opinion on, and to affect the ultimate disposition of, the PFACA, and Defendant Schafer's decision to approve the same, have injured, and will continue to injure, Plaintiff in the manner described in paragraphs 7 to 15.

# RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that the Court issue an Order:

    A.    Declaring that the motion passed at Defendant AEB's November 2007 Executive Committee meeting violates the Egg Research Consumer Information Act, 7 U.S.C. § 2707(h), the Commodity, Promotion, Research and Information Act, 7 U.S.C. § 7414(d), and USDA's Egg Research and Promotion Order Regulations, 7 C.F.R. § 1250.351;

    B.    Declaring that Defendant Schafer's decision approving the transfer of $3 million from the AEB's reserves to its special projects budget, and approving the expenditure of these funds, is arbitrary and capricious, an abuse of discretion, and not in accordance with the Egg Research Consumer Information Act, 7 U.S.C. § 2707(h), the Commodity, Promotion, Research and Information Act, 7 U.S.C. § 7414(d), and the USDA's Egg Research and Promotion Order Regulations, 7 C.F.R. § 1250.351, in violation of the Administrative Procedure Act, 5 U.S.C. § 706;

    C.    Setting aside Defendant Schafer's approval of the AEB's revised 2008 annual budget, and remanding this decision to Defendant Schafer with instructions to rescind the USDA's approval of the transfer of $3 million from the AEB's reserves to its special projects budget, and approval of the expenditure of these funds;

    D.    Enjoining Defendant Schafer from approving any activity of the AEB the purpose of which is to affect voter opinion on, or the ultimate disposition of, the Prevention of Farm Animal Cruelty Act, California ballot initiative number 07-0041, and any expenditure of federal checkoff funds in support of such activities, whether undertaken by the AEB or another entity;

    E.    Enjoining Defendant AEB from spending federal checkoff funds on any activity the purpose of which is to affect voter opinion on, or the ultimate disposition of, the Prevention of Farm Animal Cruelty Act California ballot

1  initiative number 07-0041, and any expenditure of federal checkoff funds in support
2  of such activities, whether undertaken by the AEB or another entity;

     F.    Awarding Plaintiff its costs and reasonable attorneys' fees; and

     G.    Awarding Plaintiff any other relief that is just and proper.

                                    Respectfully submitted,

                                    */s/ Jonathan R. Lovvorn*

August 11, 2008                      Jonathan R. Lovvorn (CA Bar No. 187393)
                                    2100 L Street, N.W.
                                    Washington, D.C. 20037
                                    (202) 955-3669 (phone)
                                    (202) 778-6132 (fax)

                                    *Counsel for Plaintiff Californians for Humane Farms*